**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

CHERYL JONES, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

HAIER US APPLIANCE SOLUTIONS,
INC. d/b/a GE APPLIANCES,

      Defendant.

_____/

CASE NO.: 6:22-cv-00409

CLASS ACTION

JURY TRIAL DEMANDED

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Cheryl Jones ("Plaintiff") brings this Class Action Complaint against Defendant Haier US Appliance Solutions, Inc. d/b/a GE Appliances ("Defendant" or "GE"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys:

## <u>NATURE OF THE ACTION</u>

1. This is a civil class action brought by Plaintiff on behalf of all Florida consumers who purchased GE's ranges and wall ovens featuring glass-front doors made with soda lime glass (collectively, the "Ovens") for normal, household use, which contain a defect causing the glass within the glass-front doors to unexpectedly break, crack or shatter during normal and foreseeable use.

2. GE is one of the largest home appliance brands in the United States. Since 1907, GE has been designing, manufacturing, and selling home appliances, and boasts that it "build[s] the world's best appliances that are in half of all U.S. homes, and we contribute to the local

1

economies in every state."[1] A substantial portion of GE's business includes the design, manufacture, distribution, marketing, advertising, and sale of Ovens featuring glass-front doors made with soda lime glass, which are the subject of this action.

3.    Over the course of several decades, GE has gained the trust of consumers who reasonably believe that GE's products, including its Ovens, are made with quality materials, and can be used safely, as intended.

4.    GE designs, manufactures, markets, advertises, distributes, and sells its Ovens to consumers throughout the United States, including in the State of Florida.

5.    GE distributes and sells its appliances, including the Ovens, online and through various authorized retailers.

6.    The cost of the GE Ovens range from approximately $500.00 to over $4,000.00 MSRP.[2]

7.    GE's Ovens suffer from a common design and/or manufacturing defect, whereby the soda lime glass used in the glass-front doors cannot withstand the high temperatures that are common when the Ovens are used for their ordinary purpose, resulting in breaking, cracking or shattering of the glass in the glass-front door (the "Defect"), and rendering the Ovens unusable for their intended purpose of safely and properly heating food.

8.    Feasible alternative designs and materials were available to GE at the time it designed and manufactured the defective Ovens, and such alternative designs were and are used by other manufacturers to produce and sell non-defective ovens.

---

[1] https://geappliancesco.com/about-us/ (last viewed January 12, 2022).
[2] https://www.geappliances.com/ge-appliances/kitchen/ranges/ and
https://www.geappliances.com/ge-appliances/kitchen/wall-ovens/ (last visited January 12, 2022).

9.    Plaintiff seeks damages and equitable remedies for herself and for the proposed Classes.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs, and in which Plaintiff and some Members of the proposed Classes are citizens of a state different from Defendant.

11.    This Court has personal jurisdiction over Defendant because it transacts business in the United States, including in this District, has substantial aggregate contacts with the United States, including in this District, engaged in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed itself of the laws of the United States and the State of Florida.

12.    In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District and Defendant transacts business in this District.

## PARTIES

13.    Plaintiff Cheryl Jones is a resident and citizen of Daytona Beach, Florida who purchased and used a GE Oven at her residence in Florida within the relevant time period.

14.    Defendant Haier US Appliance Solutions, Inc., doing business as GE Appliances, is a Delaware corporation with its principal place of business located at 4000 Buechel Bank Road, Louisville, Kentucky 40225. During the relevant time period, Haier, which describes itself as a leading home appliance provider, also maintained a factory service location in Lakeland, Florida.

## FACTUAL ALLEGATIONS

15.     Founded in 1892 as a result of a merger between Edison General Electric Company and Thomson-Houston Electric Company, GE is an American multinational company that has produced a wide variety of home appliances, including ovens, for more than 100 years.[3]

16.     GE represents that "we make life better by designing and building the world's best appliances. From design to production to service, our goal is to help people improve their lives at home."[4] "When people buy from us, they don't just get an appliance, they become a member of our family, a family that is there for one another for the life of the product."[5]

17.     According to GE's appliance milestone timeline, it was 1907 when it marketed its "First Full Line of Cooking Devices," including an electrical cooktop.[6] In 1963, after several decades of manufacturing cooking devices, GE unveiled the first self-cleaning oven.[7] Many of its milestones through to the modern era, include innovations in the development of ovens.

18.     On its website, GE represents itself to be "America's #1 Appliance Brand."[8]

19.     GE further represents that, in its sale of home appliances, it employs a "forward-thinking tradition that spans over 100 years," and further that it "…make[s] appliances that work in service of you. By understanding exactly what you need — and exactly what you don't. [W]hen we build our world-class refrigerators, dishwashers, ovens, washers and dryers — what we're

---

[3] https://www.ge.com/about-us (last visited January 12, 2022);
https://www.geappliances.com/ge/cooking-milestones/ (last visited January 12, 2022).
[4] https://www.geappliances.com/our-company/ (last visited January 12, 2022).
[5] *Id.*
[6] https://www.geappliances.com/ge/cooking-milestones/ (last visited January 12, 2022).
[7] *Id.*
[8] https://www.geappliances.com/ (last visited January 12, 2022).

really creating are good things, for life."[9] GE further represents itself as "a place where we come together to invent, make, build, sell, install and service "good things, for life."[10]

20.    To that end, GE produces and sells hundreds, if not thousands, of kitchen appliances, including the Ovens.

21.    As of 2020, GE had approximately 13,000 employees in the United States, many of whom work in its U.S.-based manufacturing facilities where, according to GE's website, a significant portion of its ovens are made.[11]

22.    As of 2021, GE had revenues in excess of $79 billion.[12]

23.    GE has Research and Development, sales, distribution, and support operations in 46 states, including New York.

## COMMON FACTUAL ALLEGATIONS

24.    Each of the Ovens at issue in this litigation is branded with the "GE" logo and is sold as a GE model Oven.

25.    "GE" is a trademark of General Electric Company and the Ovens are manufactured under a trademark license from General Electric Company.

26.    Each of the Ovens has a door with a glass window made of soda lime glass.

27.    Each of the Ovens contains common design and/or manufacturing Defects that can and have caused the glass on its doors to break, crack or shatter. More specifically, the soda lime glass used in the Ovens suffers from a uniform defect whereby it cannot withstand the high temperatures that are common when the Ovens are used for their ordinary purpose, such as

---

[9] https://www.geappliances.com/ge/about-ge-appliances/ (last visited January 12, 2022).
[10] https://geappliancesco.com/ (last visited January 12, 2022).
[11] https://geappliancesco.com/content/economic-impact-report-2020.html (last visited January 12, 2022).
[12] https://www.statista.com/statistics/220718/number-of-employees-at-general-electric/ (last visited January 12, 2022).

cooking, resulting in the breaking, cracking or shattering of the glass-front door under normal and foreseeable use by consumers.

28.    GE expressly and impliedly warranted, via user manuals, marketing, advertisements, pamphlets, brochures, circulars, samples, and/or models that the Ovens are fit for the ordinary purpose for which such goods are used, including safely cooking food.

29.    GE also expressly warranted that, for a period of one year from the date of the original purchase, it would provide, free of charge, all labor and related service costs to replace any defective parts of the Ovens that fail due to defects in materials or workmanship (the "Warranty").

30.    GE's Warranty expressly applies to the original purchaser and any succeeding owner of the Ovens, creating privity between GE on the one hand, and Plaintiff and Class Members on the other.

31.    Unknown to consumers, but known to GE, the Defect in the glass doors in the Ovens exists at the point of sale to consumers, and renders the Ovens unfit for the ordinary purpose for which they are sold.

32.    As a result of the Defect, the Ovens pose an unreasonable risk of harm to consumers and their property.

33.    The average service life of an oven should be at least thirteen years[13] and Plaintiff and consumers expect that the Ovens they purchase will last at least that long; however, the Ovens prematurely fail months or years before the end of their expected service life due to the Defect.

---

[13] *See e.g.* https://www.housebeautiful.com/lifestyle/g25319945/how-long-household-appliances-last/ (last visited January 12, 2022); https://www.hwahomewarranty.com/learning-center/homeowners/how-long-will-appliances-last (last visited January 12, 2022); https://www.bobvila.com/slideshow/this-is-how-long-each-of-your-major-appliances-should-last-52614 (citing National Home Builders)(last visited January 12, 2022);

34.    As a direct, proximate, and foreseeable result of the Defect, Plaintiff and Class Members suffered damages, including, but not limited to: (i) the difference in value of the Ovens as warranted and the Ovens received; (ii) loss of use of the Ovens; (iii) property damage; (iv) costs to repair or replace their Ovens and/or Oven door glass; and (v) consequential damages.

35.    Had the Ovens been properly designed and/or manufactured free of the Defect, Plaintiff and Class Members would not have suffered damages in that they either would not have purchased their Ovens on the same terms or for the same price, or they would have paid less for them.

**THE DEFECT**

36.    The Ovens are designed and/or manufactured with soda lime glass, which has a coefficient of thermal expansion of $82 \ 10^{-7} / {}^{0}C$.

37.    When heated, the soda lime glass expands substantially more than occurs in more suitable types of glass (e.g., borosilicate glass, which has a coefficient of thermal expansion of $32 \ 10^{-7} / {}^{0}C$). This makes the glass doors in the Ovens significantly more prone to an abrupt and unexpected failure — breaking, cracking or shattering. This is because soda lime glass has a high coefficient of thermal expansion with very poor thermal shock resistance.

38.    Breaking, cracking or shattering occurs because soda lime glass cannot withstand nearly the same range of temperature changes as other, more suitable types of glass (e.g., borosilicate glass).

---

https://www.consumerreports.org/cro/news/2009/03/by-the-numbers-how-long-will-your-appliances-last-it-depends/index.htm (citing National Association of Home Builders/Bank of America Study of Life Expectancy of Home Components)(last accessed January 21, 2022).

39.    Soda lime glass is significantly less expensive to produce than other types of glass (e.g., borosilicate glass) because both raw material and energy costs are lower. Unfortunately for unsuspecting consumers, a demonstrable reduction in quality and safety accompanies this reduction in costs.

40.    Because soda lime glass is peculiarly prone to breaking, cracking, shattering and exploding when exposed to rapid changes in temperature (i.e., thermal shock), it is unsuitable for use in the Ovens.

41.    In addition to being an improper material for use in the Ovens, soda lime glass is also improper because it must be tempered, or heat-strengthened, to increase its thermal shock resistance. Tempering, however, is not a solution to the problems associated with soda lime glass in applications such as how it is used in the Ovens. Rather, tempering during the manufacturing process exacerbates the problems associated with soda lime glass, particularly if the glass-front doors of the Ovens made with soda lime glass are unevenly and/or poorly heated (i.e., tempered), or not heated to high enough temperatures to enhance the safety of the glass, which is the case with the Ovens at issue in this litigation.

42.    As a manufacturer of the Ovens, and of numerous other household cooking appliances for more than 100 years, GE knew, or should have known, that glass can and does sustain minor damage in normal and expected use in Ovens. GE also knew, or should have known, that tempered soda lime glass is particularly susceptible to thermal shock failure and, therefore, inappropriate for use in glass oven doors, regardless of its reduced cost.

43.    Further, the Defect is latent and GE knows or should have known that it typically manifests after the expiration of GE's Warranty, but far prior to the expected service life of the Ovens.

8

44.     Here, GE chose to use soda lime glass as a major component in the Ovens knowing that: (1) it would not properly protect against thermal shock failure, but would actually increase the risk of such failure over time with normal use; (2) it would not prevent shattering or breakage of the door; and (3) it would suffer from inconsistent surface compression stress and internal tension that can cause the glass to break or shatter, causing premature failure of the Ovens and potential injuries to consumers.

## PLAINTIFF CHERYL JONES' ALLEGATIONS

45.     In or around September 2019, Plaintiff Cheryl Jones moved into a brand-new home in Daytona Beach, Florida, with a GE Built-In Single Convection Wall Oven.  Ms. Jones purchased the Oven from Minto, the homebuilder, (Serial No. MM003837Q). She purchased the Oven for normal, household use and it was, in fact, used at all times for normal household purposes and in a foreseeable manner.

46.     Ms. Jones specifically purchased the Oven based on the GE name and reputation thinking it was a good, reliable product, and because of the white color which matched her cabinetry. When she selected this Oven in particular, she expected it would last several years, and that it did not contain a defect which would cause the glass-front door to break, crack or shatter, posing a safety risk and rendering the oven unsafe.

47.     Like the ordinary consumer, Ms. Jones did not have the opportunity to negotiate the terms of the Warranty with GE prior to or at the time of purchase. Ms. Jones was likewise aware that other brands of ovens also came with similar terms and disclaimers, and thus, Ms. Jones did not have a meaningful choice in the terms of the Warranty or in selecting her Oven based on other available, less restrictive warranties.

48.    Shortly after her purchase, Ms. Jones' Oven was professionally installed in her kitchen, and she proceeded to use it. She regularly used the Oven as intended until November 29, 2021.

49.    On November 29, 2021, Ms. Jones used the Oven's self-cleaning function for the first time, during which the interior glass shattered into pieces, as shown in the images below:



Plaintiff Jones' shattered glass-front Oven door (above)



Front view of Plaintiff Jones' shattered glass-front Oven door (above)



Alternate view of Plaintiff Jones' shattered glass-front Oven door (above)

50.    The shattered glass-front door rendered Ms. Jones' Oven useless for its intended purpose, as it is not possible, nor safe, to use the Oven without the seal provided by the presence of intact glass to trap heat within the unit in order to reach the desired temperature to heat and/or cook food. Shortly after her glass-front Oven door shattered, Ms. Jones contacted GE and was told that GE would not cover the costs of replacing the glass. Ms. Jones then contacted John's Appliances over the telephone and was quoted approximately $500.00 to replace the Oven door glass.

51.     After GE refused to repair or replace Ms. Jones' Oven door glass and considering the repair costs of $500.00 as well as her loss of trust in GE and its product quality, Ms. Jones chose to purchase a new oven for $2,766.96, for which she paid out-of-pocket. Ms. Jones specifically chose a replacement oven manufactured by one of GE's competitors due to her negative experience with GE's glass-front Oven doors.

52.     Because  GE unlawfully concealed the latent Defect from Ms. Jones prior to her purchase, and later, after the Oven was installed and used in her home, Ms. Jones did not suspect (and had no  reason to suspect) that there was anything wrong with her Oven until the glass-front door shattered.

53.     Mr. Jones' Oven did not operate safely for the full duration of its expected useful life because it contained the Defect at the time it was purchased. Had she known of the Defect, Ms. Jones either would not have purchased the Oven or would have paid less for it. Therefore, she did not receive the benefit of her bargain.

### GE'S ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF THE DEFECT

54.     As shown below from hundreds or more complaints made to GE, as well as its own internal documents, GE knew when it sold the Ovens to the public that they suffered from the Defect, were unsafe, could not be expected to function properly for the full duration of their expected useful life, represented an unreasonable risk that the glass would shatter, and represented an unreasonable and significant risk of personal injury and/or property damage to consumers and the public.

### Consumer Complaints Dating Back to 2011 Confirm GE's Knowledge of the Defect

55.     GE's knowledge of the Defect may be established through consumer complaints, including several years' worth of complaints submitted to the United States Consumer Product

13

Safety Commission ("CPSC"), which provided direct notice to GE of the complaints and the opportunity to respond to each, as well as public Internet posts and Warranty claims regarding the glass-front doors of the Ovens breaking, cracking or shattering during normal use. Despite its knowledge, GE did not remediate or eliminate the Defect in the Ovens, remove them from the stream of commerce, or alter the terms or duration of its unconscionable one-year Warranty. Further, GE failed to adequately compensate consumers for costs associated with repairing or replacing the glass, despite the fact that the Defect exists at the point of purchase.

56.    Indeed, over the years, there have been numerous reports of the Defect complained of in this action, which did or should have put GE on notice of the Defect. For example, in 2011, ABC7 News in San Francisco, California reported on a consumer's experience with the glass door of her oven shattering and scattering in all directions.[14] GE was put on notice of the Defect via the consumer's Warranty claim, which GE denied. GE confirmed its notice of the Defect through its response to the news agency, wherein it stated that "GE warns consumers about inadvertent damage to glass oven doors – including the potential for broken or shattered glass – in its Use and Care Guide."[15]  If any such disclosure is made, GE's inadequate consumer warning regarding the potential for broken or shattered glass is only relevant to the extent it constitutes an admission by GE that it is aware of the Defect and seeks to place the blame on consumers for broken or shattered glass resulting from the Defect.

---

[14] https://abc7news.com/archive/8400304/ (last visited Dec. 22, 2020).
[15] *Id*.

57.     In 2012, a contributing columnist for the Toronto Star newspaper wrote a column complaining about the glass in her three-year-old oven door shattering.[16] GE again confirmed its awareness of the issue by responding to the author via Twitter.[17]

58.     In 2015, GE was put on further notice prior to the filing of this lawsuit when a high-profile investigation by ABC6 Action News in Philadelphia, Pennsylvania publicly addressed this very issue and drew a response from GE.[18]

59.     Customer complaints are also available online. For example:

GE oven door glass shattered!

**bedelia**

**12 years ago**

I have a GE electric range that is 2 yrs. old. I was using the self-cleaning feature this week, and after 2 hrs., I heard a loud pop. I turned the oven off, and once I was able to open the door, saw that the inside glass window in the door had shattered into pieces.

I called GE, and the rep stated that this does happen sometimes. They sent a tech out at no charge to look at it. When he called in the report, they stated that I would have to pay $165 for labor costs to fix it. The glass itself would be at no charge. (My local service guy would charge me $165 for both labor and glass).

I was livid. I thought GE would stand behind its appliances, but apparently not. How can they market something that has this defect in it?

The tech suggested that I call myself (to see if it made any difference) and was told the same thing. I was told it was out of warranty, and that if they covered the labor, the tech would forfeit his pay for the service call. I never heard of such a thing.

$165 isn't going to put me in the poor house, but I think it's something that GE should stand behind.

Am I making a big deal out of nothing? Has anyone had a similar experience with GE? Any suggestions?

Sorry for ranting and raving, but I know I'll never buy another GE anything.[19]

***

---

[16] https://www.thestar.com/business/2012/07/20/when_ge_glass_oven_door_shatters_who_pays_for_repairs.html (last visited Dec. 22, 2020).
[17] *Id.*
[18] https://6abc.com/consumer-report-exploding-ovens/1060683/ (last visited Dec. 22, 2020).
[19] https://www.houzz.com/discussions/2314627/ge-oven-door-glass-shattered (emphasis added) (last visited Jan. 12, 2022).

We purchased a new GE induction slide-in range from HHGregg and they are no longer in business. The stove was purchased in February of 2017, today the oven glass door exploded... Glass was everywhere. Exploded inside the oven as well as outside. I was on the phone to GE for over 55 minutes and am very dissatisfied with GE customer service. This occurred on Thursday May 4th. We were told they would get somebody out here to look at the stove and the damage the following Wednesday which was six days from the time the incident was reported. I found that to be unreasonable given the fact that I have glass all over my kitchen. I wasn't certain if I should try to clean up the glass or if somebody wants look at the pattern of the glass to try to determine exactly what caused this to explode. Extremely dangerous situation.

A representative from GE customer service offered us a $50 check, which is laughable, for the inconvenience of having to wait several days before somebody can come out and take a look at the damage. It was also suggested that they would probably repair or replace the door. This was a $3,000 stove. I am not going to accept a repair on a $3,000 stove. I want the stove replaced with a safe brand. Do not purchase GE products!!! Plus I cut my leg on glass!![20]

60.     In addition, GE has received hundreds or more complaints made to the CPSC, which gives businesses the opportunity to respond to reports about potentially dangerous products. As noted on its website, "Businesses that manufacture, import, and label consumer products receive notifications if any of their products are reported."[21]  A sample of these complaints, which number in the hundreds or more, are attached hereto as Exhibit A, a subset of which can also be found on saferproducts.gov and are detailed below in relevant part. Each of these complaints was reported to GE, confirming that GE has known of the Defect since at least 2011:

**Purchase Date:** 6/8/2008

**Incident Description:** My gas range is 4 years old. I broiled pork chops for 20 minutes, turned off the oven and proceeded to feed my family. About 30 minutes later my entire family was sitting at the dinner table and I heard a pop. I looked into the kitchen to find the outer glass door to my oven shattered and in a thousand pieces on my kitchen floor. Nobody was in the kitchen at the time and the oven had been turned off for the last 30 minutes. Luckily, my three children were sitting at the dinner table and nobody was injured.

---

[20] https://www.consumeraffairs.com/homeowners/ge_wall_oven.html?page=4 (last visited Jan. 12, 2022).
[21] https://www.saferproducts.gov/ (last visited January 12, 2022).

**Incident Date:** 6/18/2012

**Report Number:** 20120618-D141E-2147466486
**Report Date:** 6/18/2012
**Sent to Manufacturer/Importer/Private Labeler:** 6/28/2012
**Report First Publication Date:** 7/13/2012
**Category of Submitter:** Consumer[22]

\*\*\*

**Incident Description:** I have a GE free standing Oven and Range. The model number is JGSP28SEK4SS. I placed the oven on a self-cleaning cycle in the Evening before going to bed. I woke up to the front glass shattered. The oven is only 2-3 years old and it should not have done that regardless of the age of the oven. *I already called GE and they of course don't want to stand behind their faulty product.* After doing some research on this product it is evident that many consumers have had the same problem.

**Incident Date:** 11/28/2011

**Report Number:** 20111129-8DE0F-2147472862
**Report Date:** 11/29/2011
**Sent to Manufacturer/Importer/Private Labeler:** 12/7/2011
**Report First Publication Date:** 12/21/2011
**Category of Submitter:** Consumer[23]

\*\*\*

**Purchase Date:** 4/9/2011
**Incident Description:** The is the second time our outside glass on our GE oven exploded sending pieces of glass that covered our kitchen floor. We were not using it, had not bumped it or disturbed it in any way. We heard the explosion and went to see what it was. Our biggest concern is for our two small pets who eat in the kitchen and could have been killed by the flying glass! If that happens, we will file a law suit, and it will be class action since so many people have experienced the same phenomena. Our GE oven Model # P5968T P2CC. The Serial # FV2 418 480. We purchased it new on 4/9/11 from Tate Appliances in Oldsmar. As I mentioned, this has happened once before and we had to pay to have it fixed in the amount of $300+.

**Incident Date:** 6/13/2015

---

[22] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1253894 (last visited January 12, 2022).
[23] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1217378 (last visited January 12, 2022) (emphasis added).

**Report Number:** 20150613-B3E9F-2147431126
**Report Date:** 6/13/2015
**Sent to Manufacturer/Importer/Private Labeler:** 6/22/2015
**Report First Publication Date:** 7/8/2015
**Category of Submitter:** Consumer[24]

**\*\*\***



**Purchase Date:** 7/1/2012

**Description:** My GE electric range oven door glass shattered when using the self cleaning feature (the middle of the three layers is what broke). Fortunately no one was injured, however, the potential for injury was certainly apparent with all the broken glass everywhere. *I called GE about the problem and they said that since the range was outside of the one year purchase date and since I had not purchased an extended warranty that I would have to pay to have the item repaired.*

**Incident Date:** 7/15/2014

**Submitter has product?:** Yes

**If yes to any, explanation:** I was told that I would have to pay to have it repaired and that the glass breaking during the self clean mode is not a common problem

**Report Number:** 20140716-B21B8-2147442824
**Report Date:** 7/16/2014
**Sent to Manufacturer/Importer/Private Labeler:** 7/24/2014
**Report First Publication Date:** 8/7/2014

---

[24] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1490515 (last visited January 12, 2022).

**Category of Submitter:** Consumer[25]

\*\*\*



**Purchase Date:** 12/8/2012

**Incident Description:** The door on my newly purchased/installed GE Profile Wall Oven (upper oven) shattered this morning at approx 8:20 am. The oven had not been used since last night. It had not been touched this morning. The glass went all over the kitchen floor and onto nearby counters. The shattering was most prominent around the left, bottom, and right edges of the glass door, less so on top. I checked the internet and there are many customer complaints (e.g. on blogs) about GE wall ovens with glass doors that shatter unexpectedly and without any cause by the consumer. Our au pair was making breakfast on a cooktop when the wall oven shattered: she reported feeling the sensation of having glass in her hands. I came home and observed tiny "puzzle" pieces of glass all over the kitchen: the glass door exploded along the plane of the door: left, down, and right.

**Incident Date:** 4/22/2013

**Submitter has product?:** Yes

**If yes to any, explanation:** I called GE to schedule repairs

**Report Number:** 20130423-1CA3D-2147456710
**Report Date:** 4/23/2013
**Sent to Manufacturer/Importer/Private Labeler:** 4/30/2013
**Report First Publication Date:** 5/14/2013
**Category of Submitter:** Consumer[26]

---

[25] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1417161 (last visited January 12, 2022) (emphasis added).
[26] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1322550 (last visited January 21, 2022).

***

**Date Manufactured:** 6/17/2013

**Incident Description:** We purchased a brand-new GE double oven in June 2013. Today the glass on the top oven door shattered. The oven was not in use, and had not been in use for several days. *In reading several online sites, this appears to be an extremely common issue, which has been going on for at least ten years. GE refused to warranty the glass.*

**Incident Date:** 5/17/2015

**Submitter has product?:** Yes

**If yes to any, explanation:** Waiting for repair, manufacturer refuses to accept liability for defect

**Have you contacted the manufacturer?:** Yes

**Report Number:** 20150517-3C67C-2147432861
**Report Date:** 5/17/2015
**Sent to Manufacturer/Importer/Private Labeler:** 5/26/2015
**Report First Publication Date:** 6/9/2015
**Category of Submitter:** Consumer[27]

***

**Purchase Date:** 7/16/2014

**Incident Description:** Two week old GE gas range. Preheated oven to 400 degrees to bake a pie. Heard a loud noise and the sound of glass breaking. Quickly turned oven off. When all the noise and sound of breaking glass stopped, I opened the oven door to find that the inside glass on the door had exploded in hundreds of little pieces all inside the oven. It is GE model #JGB695SEFSS. Not something you expect to happen in a brand new appliance.

**Incident Date:** 8/9/2014

**Have you contacted the manufacturer?:** Yes

**Report Number:** 20140813-4C861-2147441964
**Report Date:** 8/13/2014
**Sent to Manufacturer/Importer/Private Labeler:** 8/21/2014

---

[27] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1485943 (last visited January 12, 2022) (emphasis added).

**Report First Publication Date:** 9/5/2014
**Category of Submitter:** Consumer[28]

***

**Purchase Date:** 6/14/2014

**Incident Description:** I was utilizing the self cleaning option on my 8 month old GE Monogram wall convection oven for the first time. After 1.5 hours into the cleaning cycle, I heard a loud bang and popping sound in my kitchen. When I looked in the kitchen, all seemed normal. When the cleaning cycle was completed & the oven unlocked, I opened the oven door to see how clean my oven was. To say I was astonished to see the inner glass shattered within my oven & spilling onto the floor, is an understatement! I had just spent $3400 on this! I am blessed that my dogs & children were not harmed by the glass & that it is covered under warranty. *Consumers need to be aware though that this is VERY common! I did months of research prior to my purchase & never saw one mention of this hazard. When I specifically searched "shattered oven door glass GE Monogram self clean", I was disgusted with the amount of complaints. Even more disappointing was how GE will not support their consumers if it is beyond their warranty period.*

**Incident Date:** 2/9/2015

**Report Number:** 20150210-C8936-2147435537
**Report Date:** 2/10/2015
**Sent to Manufacturer/Importer/Private Labeler:** 2/20/2015
**Report First Publication Date:** 3/9/2015
**Category of Submitter:** Consumer[29]

***

**Purchase Date:** 2/12/2015

**Incident Description:** my ge oven glass outer door shattered/exploded last night.I heard no noise and the oven was not being used.we woke up this morning to find the kitchen floor littered with pieces of glass.

**Incident Date:** 5/23/2017

**Report Number:** 20170523-8BB69-2147400296
**Report Date:** 5/23/2017
**Sent to Manufacturer/Importer/Private Labeler:** 6/1/2017
**Report First Publication Date:** 6/15/2017

---

[28] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1422841 (last visited January 12, 2022).
[29] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1467826 (last visited January 12, 2022) (emphasis added).

**Category of Submitter:** Consumer[30]

\*\*\*

**Purchase Date:** 5/22/2015

**Incident Description:** The outer layer of the glass oven door exploded. The range is a GE 30-inch, purchased May 2015. Product code is JB640DFBT. The oven was in use at the time.

**Incident Date:** 8/9/2017

**Report Number:** 20170809-A5ADA-2147398252
**Report Date:** 8/9/2017
**Sent to Manufacturer/Importer/Private Labeler:** 8/17/2017
**Report First Publication Date:** 8/31/2017
**Category of Submitter:** Consumer[31]

\*\*\*

**Purchase Date:** 9/16/2016

**Incident Description:** The glass shattered when using the self cleaning feature of my GE range model JGS750SEFSS for the first time. I followed the instructions in the manual, and started the self clean cycle for 3 hours. About 45 minuets later I heard a pop in the oven and notices that glass had shattered in the oven. I stopped the self cleaning immediately. I am so thankful that I was standing by the oven when it happened, otherwise I fear that my house would have burned down. I did a little research and found that this issue has been reported all over the country back to at least 2015. This has the potential to be a big product liability case and could cause death and injury. I would hope that someone can put a stop to GE selling these dangerous products. An alternative would be to have them create a repair program to eliminate the danger of exploding glass. Nobody wants and exploding oven! Also, this happened a few days before Thanksgiving and I will not be able to use my oven at all. Purchased: September 2016. Oven door shattered on November 2018 the first time we used the self-cleaning feature.

**Incident Date:** 11/17/2018

**Report Number:** 20181117-2757D-2147384296
**Report Date:** 11/17/2018
**Sent to Manufacturer/Importer/Private Labeler:** 12/7/2018
**Report First Publication Date:** 12/21/2018

---

[30] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1665599 (last visited January 12, 2022).
[31] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1685947 (last visited January 12, 2022).

**Category of Submitter:** Consumer[32]

\*\*\*



**Incident Description:** On Father's Day I put baked beans and mac and cheese in my GE wall oven. The mac and cheese was done so I opened the oven door and took out the pan and my glass oven door on the outside exploded. Glass went everywhere, on me, my 4 puppies that were in the kitchen, and all throughout the bottom floor of my home and even in the food. *My concern is that I have contacted GE and I know the oven is out of warranty but they have been very vague stating these things happen.* I would like other to be aware of this so no one is seriously hurt. I did receive cuts and one of the puppies had glass in his foot but thank the Lord nothing more. What a mess.

**Incident Date:** 6/18/2017

**Report Number:** 20170715-CE0B1-2147398957
**Report Date:** 7/15/2017
**Sent to Manufacturer/Importer/Private Labeler:** 7/24/2017
**Report First Publication Date:** 8/14/2017

---

[32] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1810995 (last visited January 12, 2022).

**Category of Submitter:** Consumer[33]

\*\*\*

**Incident Description:** My GE electric stove/oven exploded and there was glass everywhere. It was not In use. The glass panel covering the entire oven door exploded. There are a lot of complaints on the internet and GE says that a hair line crack in the glass can rupture and explode anytime In the future. Perhaps this Is NOT a good design. The moment these products leave the manufacturing process they are moved, pushed. bumped on their way to the distributors etc. There is a great potential to explode. Now what. I was told by GE that I cannot use the oven without replacing the entire oven door. That means paying for a new door shipping & handling and hiring an appliance technician to install. OR, I can purchase a new stove. All of these options come close to the cost of a new stove. This appliance should have something else breakdown before the glass starts exploding. GE should make It CLEAR to consumers that the design of this glass oven door panel is unsafe and will probably explode and should no longer make this design.

**Incident Date:** 1/29/2017

**Submitter has product?:** Yes

**Have you contacted the manufacturer?:** Yes

**Report Number:** 20170215-86402-1633167
**Report Date:** 2/15/2017
**Sent to Manufacturer/Importer/Private Labeler:** 3/9/2017
**Report First Publication Date:** 3/23/2017
**Category of Submitter:** Consumer[34]

\*\*\*

**Incident Description:** I have a GE electric glass top oven that when I turned it on to warm up the whole front glass door exploded and blasted glass everywhere. I was at sink and my pets were standing in front of oven when it exploded they appear to be OK I screamed it was really scary! *I contacted GE they said they will send someone out to look at it to determine if it is a safety issue or not and it isn't under warranty.*

**Incident Date:** 2/2/2017

**Report Number:** 20170202-4DE75-2147407415

---

[33] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1678422 (last visited January 12, 2022) (emphasis added).
[34] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1633167 (last visited January 12, 2022).

**Report Date:** 2/2/2017
**Sent to Manufacturer/Importer/Private Labeler:** 3/1/2017
**Report First Publication Date:** 3/15/2017
**Category of Submitter:** Consumer[35]

\*\*\*



**Incident Description:** The outer glass door of our GE oven range exploded by itself and shattered the glass all over the place. We have seldom used this oven, maybe twice a month or less. During this time we cooked a vegetable just quick maybe 10 minutes at most, then after 30 minutes after the oven was already turned off, we were standing 10 feet away and suddenly we heard a load bang. That's when we noticed the glass door shattered and small glass pieces all over it. My first thought was that what if a baby or a kid was in front of it when it explodes. The fact that it exploded itself when nobody was using or touching is a very serious safety concern. *I contacted GE and they said they will not cover anything since it is out of warranty and even claim that we hit it.* This is so ridiculous. This is not about the warranty anymore, it is about safety. They asked me to get a technician to look what's an issue with their oven, make a report and send it to GE. I declined, I said why it is me to pay a technician to look what's wrong at your oven. I told them to bring their own technician and look at their oven. I search the internet and this looks like not an isolated incident, lots of this happened and it already in the news.

**Incident Date:** 8/7/2017

**Submitter has product?:** Yes

**If yes to any, explanation:** GEsaid it is not covered anymore by warranty.

**Report Number:** 20170920-4C9CD-2147397325
**Report Date:** 9/20/2017
**Sent to Manufacturer/Importer/Private Labeler:** 1/19/2018

---

[35] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1629790 (last visited January 12, 2022) (emphasis added) (emphasis added).

**Report First Publication Date:** 2/5/2018
**Category of Submitter:** Consumer[36]

\*\*\*




**Purchase Date:** 6/20/2018

**Incident Description:** 0n 22-Nov-18 we were using the GE Profile™ Series 30"
Built-In Double Convection Wall Oven (Model Number = PT9551BL1TS) and the
outer window of the top over shattered. This caused several pounds of glass shards
to be spread all over the kitchen creating a safety hazard. In addition, the food items
in the oven had to be tossed for fear of glass contamination. Both ovens were on at
the time - top oven at 350 degree F; bottom oven at 325 degree F. Then the door
just shattered. The oven was installed on 11-Jul-2018 and has functioned normally
even as high as 500 degrees F. While no one was in the vicinity of the oven, the
shattering of glass could have injured adults and children. We choose to report this
so it may be tracked with other incidents of a similar nature.

**Incident Date:** 11/22/2018

**Submitter has product?:** Yes

---

[36] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1697137 (last visited January
12, 2022).

**If yes to any, explanation:** Wall Oven cannot be uninstalled until replaced. Contacted GE on 23-Nov-18.

**Report Number:** 20181123-9246C-2147384204
**Report Date:** 11/23/2018
**Sent to Manufacturer/Importer/Private Labeler:** 12/3/2018
**Report First Publication Date:** 12/18/2018
**Category of Submitter:** Consumer[37]

\*\*\*





**Purchase Date:** 4/10/2018
**Incident Description:** The outer glass door on our GE gas oven shattered, sending pieces of glass all over our kitchen. There hadn't been any damage to the door previously and we were using the oven according to the manufacturer's instructions. My wife and I suffered some small scratches from the glass, me while cleaning and my wife when the glass broke. We were cooking pasta at 400 degrees for 20 minutes. The glass broke right after taking the pasta out and turning the oven off, not while closing the door.

**Incident Date:** 5/24/2021

---

[37] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1811747 (last visited January 12, 2022).

**Report Number:** 20210524-4FBA2-2147363942
**Report Date:** 5/24/2021
**Sent to Manufacturer/Importer/Private Labeler:** 5/27/2021
**Report First Publication Date:** 6/11/2021
**Category of Submitter:** Consumer[38]

\*\*\*





**Incident Description:** The outer door of my GE wall oven exploded, sending glass shards throughout our kitchen. The oven model: JKP70D P1BB.

**Incident Date:** 3/25/2021

**Report Number:** 20210419-AB28D-2147364644
**Report Date:** 4/19/2021
**Sent to Manufacturer/Importer/Private Labeler:** 4/22/2021
**Report First Publication Date:** 5/6/2021
**Category of Submitter:** Consumer[39]

---

[38] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3321706 (last visited January 12, 2022).
[39] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3218694 (last visited January 12, 2022).

\*\*\*



**Incident Description:** GE Electric Oven Glass Door Shattered while preheating oven; This was original appliance installed as part of Builder/Contractor standard home appliance package January 2020. I was injured while cleaning up all of the shattered glass that fell to the floor in the kitchen area around the oven when I kneeled to gather the glass; The small cut on my knee was easily cared for with cleaning and a bandaid.

**Incident Date:** 8/28/2021

**Submitter has product?:** Yes

**If yes to any, explanation:** There was no damage to the oven or door prior to this event.

**Report Number:** 20210829-2953B-2147360806
**Report Date:** 8/29/2021
**Sent to Manufacturer/Importer/Private Labeler:** 9/1/2021
**Report First Publication Date:** 9/16/2021
**Category of Submitter:** Consumer[40]

---

[40] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3428428 (last visited January 12, 2022).

61.     These complaints represent only a small sample of the numerous complaints reported to the CPSC, which the CPSC communicated directly to GE. Despite these numerous complaints, rather than correcting the Defect by including safer and more appropriate borosilicate glass or paying for all costs associated with replacing the glass because the Defect exists at the time of purchase, GE instead refuses to cover the full costs of repairs, placing the burden and blame on consumers.

62.     Because of its knowledge of the Defect, GE has a duty to disclose the Defect and to not conceal it from Plaintiff and Class Members. GE's failure to disclose, and/or active concealment of, the serious safety Defect places Plaintiff and Class Members at an unreasonable and unnecessary risk of personal injury and/or property damage.

63.     GE still markets and sells the Ovens, still conceals the existence of the Defect, still fails to notify consumers of the safety Defect, still fails to recall the Ovens, and still fails to cover the cost of replacing the glass once it breaks or shatters if it is outside of the one-year Warranty period, despite the fact that the Defect exists at the time of sale.

64.     Moreover, GE continues to falsely represent through written warranties that the Ovens are free from Defect, are of merchantable quality, and will perform dependably for years, when the Defect exists at the time of sale, which is unknown to consumers and known to GE.

65.     When corresponding with customers, GE does not disclose that the Ovens suffer from the Defect, or that glass-shattering events result from it. As a result, reasonable consumers, including Plaintiff and Class Members, purchased and used, and continue to purchase and use the Ovens in their homes even though it is unsafe to do so.

66.     When GE repairs the Ovens after the glass breaks or shatters, it fails to properly attribute the failure to the Defect, and merely replaces the defective glass-front door with an identical, equally defective part, which does not prevent the recurrence of the issue.

67.     Had Plaintiff, Class Members, and the consuming public known that the Ovens were defective and posed an unreasonable risk of harm to themselves and their property, and that GE would not cover the costs associated with repairing the glass, they either would not have purchased the Ovens, or would have paid less for them.

68.     GE wrongfully places on Plaintiff and Class Members the burden and expense involved in discovering the Defect, repairing and replacing failed parts (potentially multiple times), and paying some or all of the out-of-pocket expenses prompted by the Defect.

## TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

69.     GE had actual knowledge for years that the Ovens contain defective glass that is prone to breaking or shattering.

70.     Although GE was aware of the dangerous Defect, it took no steps to warn Plaintiff or Class Members of such Defect and the dangers it posed.

71.     At least by 2011, if not earlier, GE had received knowledge that there were issues regarding the shattering of the Ovens' glass-front doors.

72.     GE was aware of the Defect as a result of receiving direct notice from the CPSC of hundreds or more consumer complaints dating back to at least 2011, receiving direct consumer complaints and Warranty claims, and via the aforementioned news story in which GE responded by acknowledging the Defect but placed the blame on consumers for the Defect.

73.     Despite its knowledge, GE has fraudulently concealed the fact that the Ovens are defective, despite having a duty to disclose the existence of the Defect.

74.    GE made affirmative misrepresentations to consumers during the sales of the Ovens, including that the Ovens were free of defects.

75.    GE concealed material facts that would have been important to Plaintiff and Class Members in deciding whether to purchase the Ovens.  GE's concealment  was knowing, and it intended to deceive Plaintiff and Class Members to rely upon it. Accordingly, Plaintiff and Class Members reasonably relied upon GE's concealment of these material facts and suffered  injury as a proximate result of that justifiable reliance.

76.    The Defect in the design and/or manufacture of the Ovens was not reasonably detectible to Plaintiff and Class Members unless there was a manifestation in the form of a breaking, cracking or shattering event.

77.    GE actively and intentionally concealed the existence of the Defect and failed to inform Plaintiff or Class Members of the existence of the Defect at all times, including when they contacted GE regarding problems with the Ovens.  Accordingly, Plaintiff and Class Members' lack of awareness was not attributable to a lack of diligence on their part.

78.    GE's statements, words, and acts were made for the purpose of suppressing the truth that the Ovens were manufactured with defective glass.

79.    GE concealed the Defect for the purpose of delaying Plaintiff and Class Members from filing a complaint on their causes of action.

80.    As a result of GE's active concealment of the Defect and/or failure to inform Plaintiff and Class Members of the Defect, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled. Furthermore, GE is estopped from relying on any statutes of limitations in light of its active concealment of the defective nature of the Ovens.

81.     Further, the causes of action alleged herein did not occur until Plaintiff and Class Members discovered that their Ovens had the Defect. Plaintiff and Class Members had no realistic ability to discern that the Ovens were defective until they learned of the existence of the Defect or suffered its manifestation. In either event, Plaintiff and Class Members were hampered in their ability to discover their causes of action because of GE's active concealment of the existence and true nature of the Defect.

## UNCONSCIONABILITY AND FAILURE OF ESSENTIAL PURPOSE OF THE EXPRESS AND IMPLIED WARRANTIES

82.     The express and implied warranties relating to the Ovens are unconscionable as follows:

a.  GE knew or should have known of the Defect in GE Ovens featuring a glass-front door made with soda lime glass, prior to and at the time of sale of the Ovens to consumers, including from the hundreds or more consumer complaints to the CPSC, which were directly reported to GE, as well as from the consumer complaints and Warranty claims made directly to GE;[41]

b.  GE was in a superior position to know of, remedy and disclose the Defect in its Ovens to Plaintiff, who could not have known of the Defect at the time of purchase;

c.  Plaintiff and Class Members had no ability to negotiate the terms of the Warranty, including the durational time limitation or disclaimers contained therein;

d.  Plaintiff and Class Members had no meaningful choice in the terms of the Warranty, including the durational time limitation or disclaimer contained therein;

e.  Plaintiff and Class Members had no meaningful choice in choosing another brand of oven, as any other reputable brand would likewise have warranties containing the same or similar terms and limitations;

f.  There was a substantial disparity between the parties' bargaining power such that Plaintiff was unable to derive a substantial benefit from the Warranty. A disparity existed because GE was aware that the Ovens were inherently defective, Plaintiff and Class Members had no notice or ability to detect the Defect, GE knew Plaintiff and Class Members had no notice or ability to detect the Defect, and GE knew that Plaintiff and Class Members would bear the cost of correcting the Defect. This disparity was increased by GE's knowledge that failure to disclose the Defect would substantially limit the Oven's use and could cause it to fail altogether;

g.  GE failed and refused to extend the time limitation of the Warranty to cover the Defect, which was known to GE and unknown to consumers at the point of sale;

h.  Plaintiff and Class Members had no ability to discover the Defect at the time of sale;

i.  The one-year durational limit on the Warranty is grossly inadequate to protect Plaintiff and Class Members from the Defect;

j.  GE sold the Ovens with knowledge of the Defect and of the fact that it may not manifest until after expiration of the one-year Warranty;

k.  GE sold the Ovens with knowledge of the Defect and of the fact that the Ovens would fail well before the expiration of their useful lives;

l.  GE sold the Ovens knowing that they were not capable of being repaired or replaced with non-defective glass within a one-year Warranty period, or thereafter;

34

m. Plaintiff and Class Members would have negotiated better terms in the purchase of their Ovens and Warranties had they been aware of the Defect;

n. The terms of the Warranty unreasonably favor GE over Plaintiff and Class Members;

83.    In addition, the Warranty fails of its essential purpose in that GE is unable to repair the Defect because it is only able to replace the broken, cracked or shattered glass with identical, equally defective Ovens and/or glass. To the extent that GE offered to replace, or did replace, the defective Ovens or glass, the warranty of replacement fails in its essential purpose given it is insufficient to make Plaintiff and Class Members whole because the Warranty covering the Ovens gives GE the option to replace the Ovens and/or glass with identical, equally defective Ovens and/or glass. Specifically, in its course of business, when GE opts to provide a replacement Oven or glass to complaining consumers, the replacement Oven or glass likewise contains the Defect, resulting in the same safety risks to the owners, and the same or similar damages can occur to the replacement Ovens and the owner's personal property. Accordingly, recovery by Plaintiff and Class Members is not restricted to the promises in any written Warranties, and they seek all remedies that may be allowed.

### FED. R. CIV. P. 9(b) ALLEGATIONS
### (Affirmative and By Omission)

84.    Although GE is in the best position to know what content it placed on its website(s) and in marketing materials during the relevant timeframe, and the knowledge that it had regarding the Defect and its failure to disclose the Defect to consumers, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

85.    WHO: GE made material misrepresentations and/or omissions of fact through its website representations, Warranties, owner's manuals, labeling and marketing, statements and

representations made by employees receiving Warranty claims, and through statements and representations made by its authorized retailers and servicers of the Ovens, which include statements such as that the Ovens were not defective, were of high quality, were suitable for their purpose of cooking and heating food, and would last as long, if not longer, than the average service life of any comparable oven.

86.    WHAT: GE's conduct here was, and continues to be, fraudulent because it omitted and concealed that the Ovens are defective, are constructed with unsuitable soda lime glass, could break, crack or shatter causing personal injury and/or property damage to Plaintiff and Class Members, were not of high quality, could present a safety hazard when being used as intended, and could fail prior to the completion of their expected useful life. GE's employees and authorized agents and representatives made affirmative misrepresentations to Plaintiff and Class Members regarding the same qualities. Further, GE's conduct deceived Plaintiff and Class Members into believing that the Ovens are not defective, are high quality, are safe to use, and will last at least as long as the full duration of their expected useful life. GE knew or should have known this information is material to reasonable consumers, including Plaintiff and Class Members in making their purchasing decisions, yet it omits any warning that the Ovens suffer from the Defect. No reasonable consumer would expect the glass in their glass-front Oven doors to break, crack or shatter when using their Ovens in a reasonably foreseeable manner.

87.    WHEN: The material misrepresentations and/or omissions detailed herein were made prior to and available at the time Plaintiff and Class Members performed research on the Ovens to gather information that would aid them in selecting the best oven to purchase; prior to and at the time Plaintiff and Class Members purchased the Ovens, prior to and at the time Plaintiff

36

and Class Members made claims after the glass broke, cracked or shattered, and continuously throughout the applicable class periods.

88.    WHERE: GE's material misrepresentations and/or omissions were made on its website(s), through marketing materials, in warranties, in user manuals, on the labeling of the packaging, as well as through statements made by its employees and authorized retailers.

89.    HOW: GE made misrepresentations and/or failed to disclose material facts regarding the Defect and true safety risks of normal use of the Ovens in written form, electronic form, or conventional hardcopy form, as well as verbally through statements made by its employees and authorized retailers.

90.    WHY: GE made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff, Class Members, and all reasonable consumers to purchase and/or pay for the Ovens, the effect of which was that GE profited by selling the Ovens to many thousands of consumers.

91.    INJURY: Plaintiff and Class Members purchased or paid more for the Ovens when they otherwise would not have absent GE's misrepresentations and/or omissions. Further, the Ovens continue to pose unreasonable safety risks and cause consumers to incur unnecessary and unreasonable out-of-pocket expenses when manifestation of the Defect occurs.

## CLASS ACTION ALLEGATIONS

92.    Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of the below-defined Classes:

> During the fullest period allowed by law, all persons residing in the State of Florida who own or owned a GE oven featuring a glass-front door made with soda lime glass.

93.     Specifically excluded from these definitions are: (1) GE, any entity in which GE has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

94.     Plaintiff seeks only damages and equitable relief on behalf of herself and the putative Classes. Plaintiff disclaims any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiff and/or putative Class Members.

95.     Plaintiff reserves the right to modify the Class definitions, if necessary, to include additional GE Oven models with the same Defect and/or other Ovens manufactured by GE with the common Defect but bearing different brand names.

96.     **Numerosity**: Class Members are so numerous that joinder of all Members is impracticable. While the exact number of Class Members is presently unknown, it likely consists of tens of thousands of people geographically disbursed throughout the United States and the State of Florida. The number of Class Members can be determined by sales information and other records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. Class Members are readily identifiable from information and records in the possession of GE and its authorized distributors and retailers.

97.     **Typicality**: The claims of the representative Plaintiff are typical in that Plaintiff, like all Class Members, purchased an Oven that was manufactured, marketed, advertised, distributed, and sold by GE. Plaintiff, like all Class Members, has been damaged by GE's misconduct in that, *inter alia*, she has incurred or will continue to incur damage as a result of overpaying for an Oven that was manufactured with defective glass, which makes the Oven

unusable, inherently dangerous, and not fit for its intended use. Furthermore, the factual basis of GE's misconduct is common to all Class Members because it engaged in systematic fraudulent behavior that was deliberate, includes negligent misconduct, and results in the same injury to all Class Members.

98.    **Commonality**: Common questions of law and fact exist as to all Class Members. These questions predominate over questions that may affect only individual Class Members because GE acted on grounds generally applicable to all Class Members. Such common legal or factual questions include, *inter alia*:

(a)  Whether the soda lime glass used in the Ovens is defective;

(b)  Whether the Ovens are defectively designed and/or manufactured;

(c)  Whether GE knew or reasonably should have known about the defective glass used in its Ovens prior to distributing and selling them to Plaintiff and Class Members;

(d)  Whether GE knew or reasonably should have known about the defective glass used in its Ovens after distributing and selling the Ovens to Plaintiff and Class Members;

(e)  Whether GE concealed from and/or failed to disclose to Plaintiff and Class Members that defective glass is used in its Ovens;

(f)  Whether GE breached the implied warranty of merchantability;

(g)  Whether GE breached express warranties relating to the Ovens;

(h)  Whether GE's Product Warranties are unconscionable;

(i)  Whether GE's Product Warranties fail of their essential purpose;

(j)  Whether Plaintiff and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

(k)  Whether GE should be enjoined from selling and marketing Ovens containing defective glass;

(l)  Whether GE engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing Ovens containing defective glass; and

(m)  Whether GE engaged in false or misleading advertising by selling and/or marketing Ovens containing defective glass.

99.    **Adequate Representation**: Plaintiff will fairly and adequately protect the interests of Class Members. She has no interests antagonistic to those of Class Members. Plaintiff retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

100.    **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) are met. GE will continue to commit the unlawful practices alleged herein, and Class Members will remain at an unreasonable and serious safety risk as a result of the defective glass at issue. Plaintiff has standing to make this claim because she would consider purchasing another Oven provided that it was manufactured in such a way as to not suffer from the Defect, or if GE extended the Warranty on the Ovens. GE acted and refused to act on grounds that apply generally to the Classes, such that final injunctive relief and corresponding declaratory relief is appropriate regarding the Classes as a whole.

101.    If GE is allowed to continue its practices of: (a) selling the Ovens with the Defect, (b) selling the Ovens with a Warranty that is incapable of being honored; (c) failing to disclose the Defect to consumers; (d) failing to remedy or adequately repair the Defect, or (d) denying Warranty claims relating to the Defect, which exist at the time of sale of the Ovens, unless injunctive or declaratory relief is granted, Plaintiff and the Class will not have a plain, adequate, speedy, or complete remedy at law to address all of the wrongs alleged herein.

102.    Plaintiff further seeks injunctive and declaratory relief requiring Defendant to cease its unfair, deceptive and unlawful conduct, including the following:

    a.    Undertake an immediate public information campaign to inform consumers of the truth about the Defect, including at the time of sale of the Ovens;

    b.    Adequately disclose the Defect to consumers at the time of sale of the Ovens;

c.   Remedy the Defect;

d.   Honor or extend the limited Warranty to cover claims relating to the Defect, including the costs of repair or replacement of the glass, as the Defect exists at the time of sale of the Ovens to consumers, which was known to GE and unknown to consumers; and

e.   Reimburse consumers for out-of-pocket costs for repair or replacement of the defective oven glass and/or Ovens.

103.   Plaintiff also seeks a declaration that the Ovens suffer from the Defect and that the Warranty covers the Defect, which existed at the time of sale of the Ovens to consumers, which was known to Defendant and unknown to consumers.

104.   Plaintiff and Class Members have been harmed and will experience irreparable future harm should GE's conduct not be enjoined because they will be unable to properly repair or replace their Ovens with non-defective components or replacement Ovens, and will have to bear the costs associated with the Defect if GE continues to fail and refuse to provide adequate remuneration to consumers as a result of the Defect, which exists at the time of sale of the Ovens.

105.   **Predominance and Superiority**: Plaintiff and Class Members all suffered and will continue to suffer harm and damages as a result of GE's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of their individual claims, it is likely that few Class Members could afford to seek legal redress for GE's misconduct. Absent a class action, Class Members will continue to incur damages, and GE's misconduct will continue without remedy. Class treatment of common

questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

106.    Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

107.    GE acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes appropriate.

<u>**COUNT I**</u>
**Violation of the Florida Deceptive and Unfair Trade Practices Act,**
**Fla. Stat. §§ 501.201, *et seq.***

108.    Plaintiff Jones hereby adopts and incorporates by reference the allegations contained in paragraphs 1 through 107 as though fully set forth herein.

109.    Plaintiff Jones brings this claim on behalf of herself and the Florida Class.

110.    This cause of action is brough pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 *et seq*. The stated purpose of this Act is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Id*. § 501.202.(2).

111.    Plaintiff and all Class Members are "consumers" and the transaction at issue in this Complaint constitutes "trade or commerce" as defined by FDUTPA. *See id*. §§ 501.203(7)-(8).

112.    FDUTPA declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id*. § 501.204(1).

113.    GE manufactures, distributes, markets, advertises and sells the Ovens. The Ovens are "goods' within the meaning of FDUTPA.

114.    For the reason discussed herein, GE violated and continues to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Florida Statute §§ 501.201, *et seq*. Defendant's acts and practices, including its omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstance, to their detriment.

115.    GE engaged in the following unconscionable, unfair, deceptive, and unconscionable practices:

(a)    GE manufactured, distributed, marketed, advertised and sold the Ovens with the Defect, which was present at the point of sale;

(b)    GE knew or should have known of the Defect and failed to disclose the Defect to consumers;

(c)    GE knew or should have known of the Defect and concealed the Defect from consumers;

(d)    GE knew the Defect within the Ovens was unknown to consumers and would not be easily discovered by Plaintiff and putative Class Members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Ovens.

(e)    GE warranted that the Ovens are free from defects and possesses built-in safety features, when the Ovens were sold with the Defect;

(f) Ge represented that the Ovens were of a particular standard, quality or grade, when they were of another; and

(g)    GE represented to consumers, including Plaintiff and Class Members that the Ovens are safe and fit for the use which they were intended, both before and after consumers complained of the Defect.

116.    Plaintiffs and Class members purchased the Ovens based on GE's representations that the Ovens were of high quality. Plaintiffs and Class Members were unaware of the Defect at the time they purchased the Ovens and had no reason to know of the Defect at that time.

117.    GE's practices described herein were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiff and Class Members, would not have purchased the Ovens, or would have paid less for them, had they known that the Ovens contained the Defect.

118.    GE engaged in unconscionable commercial practices by failing to reveal material facts and information about the subject Ovens, which did, or tended to mislead Plaintiff and the members of the class about facts that could not reasonably be known by the consumer.

119.    Further, consumers, including Plaintiff and Class Members, would have negotiated different warranty terms had they known of the Defect.

120.    GE's violations described herein present a continuing risk to Plaintiff and the general public. GE's unlawful acts and practices complained of herein affect the public interest.

121.    GE's acts, omissions and practices proximately caused plaintiff and Class Members to suffer actual damages.  Plaintiff and the members of the classes overpaid for the Ovens and did not receive the benefit of their bargain.  In addition, Plaintiff and Class Members have been harmed in the amount of out-of-pocket costs to repair or replace their Ovens and/or Oven door glass.

122.    As a direct and proximate result of GE's unfair or deceptive acts or practices, Plaintiff and Class Members have been damaged, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

123.    Plaintiff seeks an order enjoining GE's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the FUDTPA and applicable law.

## <u>COUNT II</u>
### Breach of Express Warranty

124.    Plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1 through 107 as though fully set forth herein.

125.    Plaintiff brings this claim on behalf of herself and the Florida Class.

126.    Plaintiff and Class Members purchased Ovens either directly from GE or through retailers, such as Lowe's, Home Depot, Best Buy, Amazon, and other appliance retailers or builders.

127.    Each of the Oven models also has an identical or substantially identical product Warranty. In its Warranty, GE warrants that, for one year from the date of the original purchase, it "will provide, free of charge, all labor and in-home service to replace [a]ny [defective] part of the oven which fails due to a defect in materials or workmanship."

128.    GE was obligated, under the terms of this express Warranty to replace the defective Ovens and/or defective glass for Plaintiff and Class Members.

129.    GE unilaterally imposed the Warranty limitations and exclusions solely for its own benefit at the expense of Plaintiff and Class Members.

130.    GE breached its express Warranties by selling Ovens that were, in actuality, not free of defect, not made from merchantable materials and workmanship, unsafe for use, and could not be used for the ordinary purpose of heating and/or cooking food. GE breached the Warranty because it sold the Ovens with the Defect, which was known to GE and unknown to consumers at the time of sale. GE further breached the Warranty because it improperly and unlawfully denies valid Warranty claims, and it has failed or refused to adequately repair or replace the Ovens with non-defective units and/or non-defective glass.

131.    GE breached its express Warranty to adequately repair or replace the Ovens despite its knowledge of the Defect, and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing the Ovens.

132.    GE further breached its express written Warranties to Plaintiff and Class Members in that the Ovens are defective at the time they leave the manufacturing plant, and on the first day of purchase, creating a serious safety risk to Plaintiff and Class Members, and by failing to disclose and actively concealing this risk from consumers.

133.    The Ovens that Plaintiff and Class Members purchased contained a Defect that created a serious hazard and damages, including breaking, cracking and shattering glass, loss of

food, loss of the product, loss of use of the product, loss of the benefit of their bargain, and other property damage. GE's Warranty expressly applies to the original purchaser and any succeeding owner of the Ovens for products purchased within the USA, creating privity between GE on the one hand, and Plaintiff and Class Members on the other.

134.    Likewise, it was reasonably foreseeable that Plaintiff and Class Members would be the intended beneficiaries of the Ovens and Warranties, creating privity or an exception to any privity requirement. Plaintiff and each of the Class Members are the intended beneficiaries of GE's Warranties and its sale through retailers. The retailers were not intended to be the ultimate consumers of the Ovens and have no rights under the Warranty agreements provided by GE. GE's Warranties were designed for and intended to benefit the consumer only and Plaintiff and Class Members were the intended beneficiaries of the Ovens.

135.    Upon information and belief, GE received further notice and has been on notice of the defective nature of the Ovens and of its breaches of Warranties through customer Warranty claims reporting problems with the glass in GE Ovens, consumer complaints from various sources, and its own internal and external testing, and GE has failed and refused to offer an effective remedy.

136.    In addition, Plaintiff Jones notified GE of the Defect in or around November 2021 when she called GE to report the broken Oven glass, and GE denied her warranty claim.

137.    Plaintiff and the members of the class have performed the duties required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of GE or by operation of law in light of GE's conduct described throughout this Complaint.

138.    Despite having notice and knowledge of the defective nature of the glass in the Ovens, GE failed to provide complete relief to Class Members with Ovens more than one year old, failed to provide a non-defective replacement Oven or non-defective replacement glass to Plaintiff and Class Members, and otherwise failed to offer any appropriate repair or compensation for the resulting damages.

139.     Any efforts to limit the express Warranties in a manner that would exclude coverage of the Ovens is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Ovens is null and void.

140.     The durational limitation in the Warranty is unconscionable and unenforceable pursuant to Uniform Commercial Code section 2-302, which states:

**§2-302. Unconscionable Contract or Clause**

(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

141.     The time limits contained in the Warranty are unconscionable and inadequate to protect Plaintiff and Class Members. Plaintiff and Class Members had no meaningful choice in determining the time limitation, the terms of which unreasonably favored GE, who had superior and exclusive knowledge of the Defect, which existed at the time of sale of the Ovens. A gross disparity in bargaining power existed between GE, and Plaintiff and Class Members, and GE knew or should have known that the Ovens were defective at the time of sale and would fail before the expiration of their useful lives.

142.     The time limits contained in the Warranty are also unconscionable given that GE is unable to repair or replace the defective Ovens during the one-year Warranty period (or after), and the Warranty is a sham. GE used its superior knowledge of the Defect to offer a Warranty, which it knew or should have known would not cover the material Defect known to GE to exist in the Ovens at the time of purchase by Plaintiff and Class Members. GE breached its express Warranties to Plaintiff and Class Members by providing them with Ovens that contain a Defect known to GE,

and unknown to Plaintiff and Class Members, at the time of purchase. GE further breached its express Warranties to Plaintiff and Class Members as it has failed or refused to remedy the Defect or is unable to remedy the Defect.

143.    GE also violated any implied covenant of good faith inherent in the Warranty by selling Plaintiff and Class Members Ovens with limited Warranties under circumstances in which GE knew or should have known would fail prematurely, some of which may occur outside of the limited Warranty period.

144.    To the extent that GE offered to replace, or did replace, the defective Ovens or glass, the warranty of replacement fails in its essential purpose given it is insufficient to make Plaintiff and Class Members whole because the Warranty covering the Ovens gives GE the option to replace the Ovens and/or glass with identical, equally defective Ovens and/or glass. Specifically, in its course of business, GE often has opted to provide a replacement Oven or glass to complaining consumers; however, the replacement Oven or glass likewise contains the Defect, resulting in the same safety risks to the owners, and the same or similar damages can occur to the replacement Ovens and the owner's personal property. Accordingly, recovery by Plaintiff and Class Members are not restricted to the promises in any written warranties, and they seek all remedies that may be allowed.

145.    Many of the damages resulting from the defective Ovens cannot be resolved through the limited remedy of replacement, as incidental and consequential damages from loss of use, loss of the benefit of the bargain, and contaminated meals have already been suffered due to GE's conduct as alleged herein.

146.    Accordingly, recovery by Plaintiff and Class Members is not limited to the warranty of replacement, and they seek all remedies allowed by law.

147.    Had Plaintiff, Class Members, and the consuming public known that the Ovens contain defective glass, posed an unreasonable risk of harm to themselves and their property, would break, crack or shatter or was prone to the same, or that GE would not properly honor its Warranty, they either would not have purchased the Ovens or would have paid less for them.

48

148.    Plaintiff and Class Members have performed all duties required of them under the terms of the express Warranty, except as may have been excused or prevented through the conduct of GE or by operation of law in light of GE's conduct described throughout this complaint.

149.    As a direct and proximate result of GE's breach of its express written Warranties, Plaintiff and Class Members suffered damages and did not receive the benefit of the bargain and are entitled to recover compensatory damages, including, but not limited to the cost of inspection, repair, and diminution in value. Plaintiff and Class Members suffered damages at the point-of-sale stemming from their overpayment for the defective Oven, in addition to loss of the product and its intended benefits.

**COUNT III**
**(IN THE ALTERNATIVE)**
**Breach of Contract**

150.    Plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1 through 107 as though fully set forth herein.

151.    Plaintiff brings this claim on behalf of herself and the Florida Class.

152.    To the extent GE's commitment is deemed not to be a warranty under the Uniform Commercial Code, relevant state commercial codes, or common law, Plaintiff pleads in the alternative under contract law.

153.    Plaintiff and Class Members purchased the Ovens from GE or through retailers such as Best Buy, Home Depot, Lowe's, Amazon, and other appliance stores and authorized retailers.

154.    GE expressly warranted that the Ovens were fit for their intended purpose and that they were free of defects, and suitable for safe heating and/or cooking food.

155.    GE made the foregoing express representations and Warranties to all consumers, which became the basis of the bargain between Plaintiff, Class Members, and GE.

156.    GE breached the Warranties and/or contract obligations by placing the defective Ovens into the stream of commerce and selling them to consumers, when it knew the Ovens

contained defective glass and were prone to breaking, cracking and shattering. These deficiencies substantially and/or completely impair the use and value of the Ovens.

157.    GE also violated any implied covenant of good faith inherent in the Warranty by selling Plaintiff and Class Members Ovens with limited Warranties under circumstances in which Defendant knew or should have known would fail prematurely, some of which may occur outside of the limited Warranty period.

158.    GE further violated any implied covenant of good faith inherent in the Warranty by selling defective Ovens that were not capable of being properly repaired or replaced within the one-year Warranty period; therefore, the Warranty is a sham because it is incapable of being honored.

159.    The deficiencies described existed when the Ovens left GE's possession or control and were sold to Plaintiff and Class Members. The deficiencies and impairment of the use and value of the Ovens was not discoverable by Plaintiff or Class Members at the time of purchase.

160.    Plaintiff and Class Members satisfied their obligations under these contracts, Warranties and agreements.

161.    GE failed to perform as required by the contracts and agreements and breached said contracts and agreements because it provided Plaintiff and Class Members with Ovens containing the Defect and failed or refused to repair or adequately repair the Defect.

162.    As a direct and proximate cause of GE's breach of contract, Plaintiff and Class Members were harmed because they either would not have purchased the Ovens if they knew the truth about the defective condition of the Ovens, or they would have paid less for them.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that this Court:

A.    Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Appoint Ms. Jones as a Class Representative;

C.    Appoint Plaintiff's counsel as Class Counsel for the Class;

D.    Award damages, including compensatory, exemplary, and statutory damages, to Plaintiff and the Classes in an amount to be determined at trial;

E.    Permanently enjoin GE from engaging in the wrongful and unlawful conduct alleged herein;

F.    Award Plaintiff and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

G.    Award Plaintiff and the Class pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

H.    Award such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 24, 2022                    Respectfully submitted,

/s/ Rachel Soffin
Rachel Soffin (FL Bar No. 18054)
Jonathan B. Cohen (FL Bar No. 027620)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
3833 Central Ave.
St. Petersburg, FL 33713
Telephone: (865) 247-0080
rsoffin@milberg.com
jcohen@milberg.com

Harper T. Segui
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, LLP**
825 Lowcountry Blvd., Suite 101
Mt. Pleasant, SC 29464
hsegui@milberg.com

*Attorneys for Plaintiff and the Proposed Classes*

51