UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

---

CHERYL JONES, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

HAIER US APPLIANCE SOLUTIONS, INC. d/b/a GE APPLIANCES,

      Defendant.

Civil Action No. 6:22-cv-00409-PGB-LHP

Class Action

---

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and (6), Defendant Haier US Appliance Solutions, Inc., d/b/a GE Appliances ("GEA") respectfully moves the Court to dismiss Plaintiff's Class Action Complaint in its entirety.

## INTRODUCTION

In 2019, Plaintiff Cheryl Jones alleges she bought a GE oven based on "the GE name and reputation." Class Action Compl., ECF No. 1 ("Compl."), ¶¶ 45–46. Her oven featured a front door composed partly of glass, and it came with a one-year limited warranty. Plaintiff used her oven for more than *two* years, at which point she alleges the glass in the oven door cracked. Plaintiff sought repairs, which she had to pay for because the oven was no longer under warranty. Now, she brings this putative class action against GEA, asserting claims for breach of express warranty, breach of contract, and consumer fraud.

All of Plaintiff's claims are deficient and should be dismissed. *First*, her breach of express warranty claim fails because (1) the oven glass allegedly cracked *after* the one-year warranty expired; (2) Plaintiff fails to adequately allege the one-year durational limit is unconscionable; and (3) the limited warranty does not cover design defects. In fact, the Southern District of New York has already looked at this exact warranty and dismissed a breach of warranty claim for these reasons. *Second*, Plaintiff's breach of contract claim fails because she does not identify any contract GEA allegedly breached apart from the express warranty. *Third*, Plaintiff lacks standing to seek injunctive relief because she does not allege facts showing likely future harm—again, a conclusion the Southern District of New York reached in dismissing a similar claim based on the same allegations. *Finally*, Plaintiff's Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim fails because she does not plead it with the requisite particularity under Rule 9(b), nor does she assert an adequate nexus between the State of Florida and GEA's alleged misconduct.

The Court should dismiss the Complaint under Rules 12(b)(1) and (6).

## STATEMENT OF ALLEGED FACTS

In September 2019, Plaintiff alleges she bought a GEA oven from a third-party homebuilder when she moved into her new home. Compl. ¶ 45. She alleges she made this purchase "based on the GE name and reputation thinking it was a good, reliable product." *Id.* ¶ 46.

2

The oven came with a one-year "Limited Warranty" that required GEA to replace any part "which fails due to a defect in materials or workmanship":

| For the period of | GE Appliances will replace |
|---|---|
| **One year**<br>From the date of the original purchase | **Any part** of the oven which fails due to a defect in materials or workmanship. During this **limited one-year warranty**, GE Appliances will provide, **free of charge**, all labor and in-home service to replace the defective part. |

Ex. 1 at 18;[1] *see also* Compl. ¶ 29. The warranty also advised customers that they may "[p]urchase a GE extended warranty on-line anytime":

| **Extended Warranties:** Purchase a GE Appliances extended warranty and learn about special discounts that are available while your warranty is still in effect. You can purchase it online anytime at<br><br>**GEAppliances.com/extended-warranty**<br><br>or call 800.626.2224 during normal business hours. GE Appliances Service will still be there after your warranty expires. |
|---|

Ex. 1 at 18. Plaintiff does not allege she took advantage of this option.

The oven worked as expected for more than two years after purchase, Compl. ¶ 49, at which point Plaintiff alleges the soda lime glass in the oven doors cracked because it allegedly "suffers from a uniform defect whereby it cannot withstand the high temperatures that are common when the Ovens are used for their ordinary purpose." *Id.* ¶ 27. Plaintiff alleges she "contacted [GEA] and was told that [GEA] would not cover the costs of replacing the glass. [She] then contacted John's Appliances over the telephone and was quoted

---

[1] This Court may consider the written warranty on this motion because "it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (holding that "a document outside the four corners of the complaint may still be considered" if it meets these criteria).

approximately $500.00 to replace the Oven door glass." *Id.* ¶ 50. Rather than paying for a repair, Plaintiff alleges she "chose to purchase a new oven for $2,766.96, for which she paid out-of-pocket." *Id.* ¶ 51.

As a result of the alleged defect, Plaintiff sued on behalf of herself and a putative class of "all persons residing in the State of Florida who own or owned a [GEA] oven featuring a glass-front door made with soda lime glass." *Id.* ¶ 92. Plaintiff "disclaims any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress." *Id.* ¶ 94. Instead, she seeks to recover injunctive and monetary relief for a violation of the Florida Deceptive and Unfair Trade Practices Act (Count I), breach of express warranty (Count II), and breach of contract (Count III).

Notably, Plaintiff is represented by the same counsel as the plaintiffs in *Haft v. Haier US Appliance Solutions d/b/a GE Appliances*, No. 1:21-cv-00506-GHW (S.D.N.Y.). Those plaintiffs also filed consumer protection act, breach of express warranty, breach of contract, and injunctive claims against GEA on the exact same factual grounds as Plaintiff. The district court dismissed the original warranty, contract, and injunctive-relief claims. *See Haft v. Haier US Appliance Solutions, Inc.*, No. 1:21-CV-00506-GHW, 2022 WL 62181, at *1 (S.D.N.Y. Jan. 5, 2022). The plaintiffs have filed a second amended complaint, which is currently subject to a second motion to dismiss.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that contains only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Likewise, "naked assertion[s] devoid of further factual enhancement" are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Though the Court must assume that well-pled allegations are true, conclusory allegations are "not entitled to th[at] assumption." *Id.* at 679. A court looks to whether the complaint includes "enough factual matter (taken as true) to suggest" that the plaintiff is entitled to relief. *Twombly*, 550 U.S. at 556. If the complaint does not nudge the plaintiff's claims "across the line from conceivable to plausible," it "must be dismissed." *Id.* at 570.

## ARGUMENT

### I.    PLAINTIFF'S BREACH OF WARRANTY CLAIM FAILS.

#### A.    Plaintiff's Breach of Express Warranty Claim Is Untimely Because the Alleged Defect Occurred Outside the One-Year Warranty Period.

Under Florida law, "the terms of an express warranty may limit or foreclose the remedies available to the buyer." *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1340 (S.D. Fla. 2013). A plaintiff thus "may not bring a claim for breach of an express warranty where a defect has not manifested

during the warranty period." *Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686-CIV, 2013 WL 6328734, at *2 (S.D. Fla. Dec. 5, 2013) (collecting cases). In short, a plaintiff's "failure to allege that they experienced a defect within the warranty period . . . is fatal" to an express warranty claim. *Brisson v. Ford Motor Co.*, 349 F. App'x 433, 434 (11th Cir. 2009) (per curiam).

Correspondingly, Florida courts routinely dismiss express warranty claims where the defect arises outside the warranty period. *See id.* (affirming dismissal on this basis); *Licul*, 2013 WL 6328734, at *2 (dismissing because "the express warranty on [plaintiffs'] Jetta expired prior to the manifestation of the Door Locks' defects"); *Aprigliano*, 979 F. Supp. 2d at 1340 (similar); *Speier-Roche v. Volksw Agen Grp. of Am. Inc.*, No. 14-20107-CIV, 2014 WL 1745050, at *7 (S.D. Fla. Apr. 30, 2014) (similar).

The *Haft* court reached the same conclusion on the exact facts presented here. *See* 2022 WL 62181, at *6. The court reasoned that the plaintiffs failed to plead the "breach" element of a breach of warranty claim because they did not allege "that the soda glass oven doors failed within the year-long period in which Defendant was obligated to replace or repair the ovens; rather, the ovens failed more than two years after they were purchased." *Id.* By the plain language of the warranty, therefore, the plaintiffs did "not allege[] a breach of the express warranty," and the court dismissed the warranty claim. *Id.*

The same outcome is warranted here. The Limited Warranty validly limits the warranty period to a "period of one year from the date of the original purchase." Ex. 1 at 18. Plaintiff concedes that she purchased the oven "[i]n or around September 2019" and "regularly used the Oven as intended until November 29, 2021." Compl. ¶¶ 45, 48. It was not until that date—over two years after the purchase—that she alleges "the interior glass shattered." *Id.* ¶ 49. This "failure to allege that [her oven] experienced a defect within the warranty period . . . is fatal" to Plaintiff's breach of warranty claim. *Brisson*, 349 F. App'x at 434; *see also supra* at 6 (collecting cases).

## B.    Plaintiff Has Not Adequately Alleged Unconscionability.

Plaintiff seeks to escape the dismissal of her warranty claim based on the doctrine of unconscionability, alleging the one-year limitation is unconscionable on procedural and substantive grounds. Compl. ¶¶ 82, 139–42. Plaintiff is wrong on both counts.

### 1.    Plaintiff must plead unconscionability with more than conclusory assertions or allegations that GEA knew of the alleged defect.

In Florida, "a court may refuse to enforce an unconscionable contract or clause" only if it "is both procedurally and substantively unconscionable." *Licul*, 2013 WL 6328734, at *3. Florida courts evaluate these individual components of unconscionability, both of which "must be present," using a "sliding scale" approach. *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1159 (Fla.

2014). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

A contract may be procedurally unconscionable under Florida law "if the circumstances surrounding a transaction indicate that the complaining party had no meaningful choice at the time of contracting." *Licul*, 2013 WL 6328734, at *3. In considering this question,

> courts must look to: (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract.

*Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2010).

"Substantive unconscionability," meanwhile, "focuses on the terms of the agreement itself and whether the terms of the contract are unreasonable and unfair." *Id.* at 1139. In general, a contract is substantively unconscionable if "no man in his senses and not under delusion would make [it] on the one hand, and . . . no honest and fair man would accept [it] on the other." *Id.* In other words, "[a] contract is substantively unconscionable if its provisions are so outrageously unfair as to shock the judicial conscience." *Licul*, 2013 WL 6328734, at *3.

Importantly, whether framed in substantive or procedural terms, "unconscionability of an express warranty requires more than a defendant's

mere knowledge of a defect at the time of sale." *Id.* The logic behind this rule is that "[v]irtually all product failures discovered in [products] after the expiration of the warranty can be attributed to a 'latent defect' that existed at the time of sale or during the term of the warranty." *Id.* at *2 (quoting *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986)). All "[m]anufacturers are aware of these potential failures and consider them in pricing and setting limitations upon warranties." *Id.* If this knowledge can render durational limitations unenforceable, it would "render meaningless . . . limitations in warranty coverage, and would be contrary to the overwhelming weight of precedent enforcing such limitations." *Id.*

Conclusory allegations are also insufficient to plead either form of unconscionability. *See Iqbal*, 556 U.S. at 678. Facing materially identical allegations regarding the same warranty at issue here, under a materially identical body of unconscionability law, the *Haft* court held that the plaintiffs failed to allege the ovens' one-year warranties were unconscionable because their "allegations of procedural and substantive unconscionability [were] both highly conclusory." 2022 WL 62181, at *10.

With respect to procedural unconscionability, the plaintiffs alleged, like Ms. Jones, that they "had no meaningful choice about the one-year time limit in the warranty," and that "GE failed and refused to extend the time limitation of the warranty to cover the Defect." *Id.* They did "not, however, provide any

9

factual allegations in support—nowhere [did the plaintiffs] allege that they inquired about the warranty prior to purchasing the oven." *Id.* Thus, the court held that the plaintiffs' allegations "amount[ed] only to . . . threadbare recitals and conclusory statements and [were] insufficient to plead procedural unconscionability." *Id.* (comma omitted).

The plaintiffs' "allegations of substantive unconscionability fare[d] no better." *Id.* They alleged, again like Ms. Jones, that "GE was aware that the Ovens were inherently defective, [the plaintiffs] had no notice or ability to detect the Defect, and GE knew that [the plaintiffs] would bear the cost of correcting the defect." *Id.* (cleaned up). These allegations also "lack[ed] requisite specificity to plausibl[y] plead substantive unconscionability." *Id.* The same was true of their allegation that "the defect 'typically' manifests after the expiration of the warranty," which "prove[d] too vague to meaningfully suggest substantive unconscionability." *Id.*

## 2. Plaintiff's unconscionability theory relies solely on conclusory assertions and allegations of knowledge.

Plaintiff makes the same allegations as the plaintiffs in *Haft*. Indeed, the vast majority of her unconscionability allegations are identical to the ones deemed conclusory in that case. *See* Ex. A ¶ 4 (comparing unconscionability

allegations in *Haft* with those in Plaintiff's Complaint).[2] The *only* overlapping allegation from *Haft* the Complaint here attempts to bolster is the assertion that "GE knew or should have known of the Defect at the time of sale." Ex. 2 ¶ 92(a). To support this allegation, Plaintiff also cites from some of "the hundreds or more consumer complaints" allegedly made to GEA regarding glass breakage in ovens and provides additional examples of these alleged complaints. Compl. ¶¶ 60, 82(a).

These additional allegations do not save Plaintiff's deficient unconscionability allegations. "[U]nconscionability of an express warranty requires more than a defendant's mere knowledge of a defect at the time of sale," yet that is all the additional allegations establish. *Licul*, 2013 WL 6328734, at *3. They do show that GEA "so abused their knowledge of a latent defect to entirely rob a customer of the . . . benefit of the warranty," as might suggest unconscionability, because the Complaint contains no facts regarding when the oven glass initially broke in these instances, what percentage of the millions of ovens that GEA sells broke outside of warranty, or how long after the warranty the glass broke. *See Haft*, 2022 WL 62181, at *10.

Ms. Jones also includes three allegations not present in the *Haft* complaint, none of which save her unconscionability argument:

---

[2] The Court "may take judicial notice of publicly filed documents … at the Rule 12(b)(6) stage." *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015).

1.   "GE was in a superior position to know of, remedy and disclose the Defect in its Ovens to Plaintiff, who could not have known of the Defect at the time of purchase;"

2.   "Plaintiff and Class Members had no ability to negotiate the terms of the Warranty, including the durational time limitation or disclaimers. . . .;"

3.   "Plaintiff and Class Members had no meaningful choice in choosing another brand of oven, as any other reputable brand would likewise have warranties containing the same or similar terms and limitations."

Compl. ¶¶ 82(b), (c), (e).

Presumably, these allegations are meant to strengthen Plaintiff's assertion that she lacked a "meaningful choice" about the warranty, but they still mirror the allegations deemed conclusory in *Haft* and other similar cases. *See* Ex. 2 ¶¶ 92(i), (j); *In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*, No. 1:14–cv–3722 (JBS–JS), 2015 WL 4591236, at *19, 22 (D.N.J. July 29, 2015) (allegation that warranty was unconscionable "in light of [the defendant's] superior knowledge of the [product's] design defect and the parties' unequal bargaining power" deemed conclusory); *Amato v. Subaru of Am., Inc.*, No. CV 18-16118, 2019 WL 6607148, at *9–10 (D.N.J. Dec. 5, 2019) (same for allegations regarding "lack of meaningful alternatives" and the "absence of effective warranty competition"); *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 565 (D.N.J. 2012) (same for allegation that warranty was "presented to customers on a take-it-or-leave-it basis").

Moreover, as a matter of law, Plaintiff's alleged inability "to negotiate the specific details" of her warranty did not deprive her of "bargaining power" because she had the option to "purchas[e] a different warranty with an extended durational limit." *Smith v. Ford Motor Co.*, 462 F. App'x 660, 663-64 (9th Cir. 2011); *see also Amato*, 2019 WL 6607148, at *10 (no unconscionability where purchaser had "the option of buying an extended warranty") (quoting *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 673 (3d Cir. 2002)). Specifically, the Limited Warranty advised Plaintiff she could "[p]urchase a GE extended warranty . . . on-line anytime." Ex. 1 at 18. This extended warranty option is a "meaningful substitute" to the one-year warranty included with Plaintiff's initial purchase. *Smith*, 462 F. App'x at 663. Plaintiff's failure to extend her warranty does not render the default warranty period unconscionable.

Finally, Plaintiff's allegations regarding customer complaints underscore the conclusory nature of her assertion that she "could not have known of the Defect at the time of purchase" and therefore lacked bargaining power. Compl. ¶ 82(b). In direct contradiction to this assertion, Plaintiff provides a laundry list of publicly available complaints, many made prior to her purchases, on various websites. *See id.* ¶¶ 56–60 (collecting examples). Nothing prevented Plaintiff from looking up these complaints before she purchased her ovens. Had she exercised even this minimal level of diligence,

she certainly *could* have learned of the complaints before buying the oven, at least enough to inquire further about the availability of an extended warranty.

In light of the extended warranty option and Plaintiff's ability to learn, pre-purchase, that glass breaks, Plaintiff needed to plead specific "supporting facts as to [her] choices and bargaining power." *Amato*, 2019 WL 6607148, at *10. She also needed to provide "more than [GEA's] mere knowledge of a defect at the time of sale." *Licul*, 2013 WL 6328734, at *3. Plaintiff failed on both counts. She does not plausibly "allege that [she] had no meaningful choice at the time of contracting, no opportunity to bargain, or no opportunity to understand the terms of [her] contract." *Id.* Nor does she plausibly allege that GEA "so abused [its] knowledge of a latent defect to entirely rob [Plaintiff] of the . . . benefit of the warranty." *Haft*, 2022 WL 62181, at *10. "Without more," Plaintiff has "failed to allege facts supporting a finding of . . . unconscionability." *Licul*, 2013 WL 6328734, at *3.

### C.   Plaintiff Alleges Only a Design Defect, which the Limited Warranty Does Not Cover.

Plaintiff's express warranty claim fails for an additional, independent reason: the Limited Warranty does not cover the defect of which Plaintiff complains. Specifically, the warranty only covers "defect[s] *in materials or workmanship.*" Ex. 1 at 18 (emphasis added). Importantly, the phrase "defects in materials or workmanship" only connotes *manufacturing* defects. *See*

*Vazquez v. Gen. Motors, LLC*, No. 17-22209-CIV, 2018 WL 447644, at *3 & n.4 (S.D. Fla. Jan. 16, 2018) ("'Materials or workmanship' is a specialized phrase that refers particularly to manufacturing defects.").[3] It follows that the Limited Warranty only obligates GEA to remedy *manufacturing* defects.

Plaintiff, however, alleges only a *design* defect, not a manufacturing defect. While a manufacturing defect involves "a mistake in the manufacturing process [that] render[s] a *specific* product defective," a design defect arises when "all products were manufactured as intended and they all contain[] [the] alleged defect." *Rhodes v. Novartis Pharms. Corp.*, No. 5:11-CV-00471-TJC, 2011 WL 5358554, at *2 n.3 (M.D. Fla. Nov. 1, 2011); *see also Harduvel v. Gen. Dynamics Corp.*, 878 F.2d 1311, 1317 (11th Cir. 1989) ("[T]he distinction is between an unintended configuration, and an intended configuration that may produce unintended and unwanted results."); Restatement (Third) of Torts § 2 cmt. d. (distinguishing manufacturing from design defects on similar grounds).

Here, Plaintiff does not allege that the glass in GEA ovens "deviat[ed] from normal or routine production" in a way "that renders an ordinarily safe

---

[3] *See also, e.g.*, *Bruce Martin Const., Inc. v. CTB, Inc.*, 735 F.3d 750, 753 (8th Cir. 2013) ("[D]efects in material and workmanship refer to departures from a product's intended design while design defects refer to the inadequacy of the design itself."); *Mack Trucks Inc. v. BorgWarner Turbo Sys., Inc.*, 508 F. App'x 180, 185 (3d Cir. 2012) (construing warranty that products would "be of good material and workmanship" according to its plain meaning as only covering manufacturing defects); *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 215–26 (S.D.N.Y. 2015) (dismissing breach of warranty claim under Florida law because warranty that covered defects in "material, workmanship or factory preparation" was limited to "manufacturing defects").

product dangerous." *Miller v. Hyundai Motor Am.*, No. 15-CV-4722 (TPG), 2017 WL 4382339, at *4 (S.D.N.Y. Sept. 29, 2017). Instead, she is "unequivocal that [GEA] knew the pertinent materials were inadequate well in advance of selecting the materials for the [oven doors]," *id.* at *5, alleging that GEA "*chose to use soda lime glass as a major component in the Ovens knowing* that [it was defective]." Compl. ¶ 44 (emphasis added). This "deliberate selection of [allegedly] defective materials" shows that GEA "acted with purpose" and "is at odds with" a manufacturing defect theory. *Miller*, 2017 WL 4382339, at *5. But it is perfectly consistent with a design defect theory.

Plaintiff's other assertions confirm that she only alleges a design defect. Indeed, allegations that *all* of a defendant's products share a common defect "strongly suggest" a design defect theory, and the Complaint is replete with such allegations. *Id.*; *see also Garcia*, 127 F. Supp. 3d at 226 (shared defects signaled design defect); *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 554 (S.D.N.Y. 2016) (same). The Complaint's first paragraph, for example, indicates that all "GE's ranges and wall ovens featuring glass-front doors made with soda lime glass . . . contain a defect causing the glass within the glass-front doors to unexpectedly break, crack or shatter." Compl. ¶ 1. And Plaintiff's design defect theory is most apparent in her description of the defect in question:

> Each of the Ovens contains common design and/or manufacturing Defects that can and have caused the glass on its doors to break, crack or shatter. More specifically, the soda lime glass used in the Ovens *suffers from a uniform defect whereby it cannot withstand the high temperatures that are common when the Ovens are used for their ordinary purpose*, such as cooking, resulting in the breaking, cracking or shattering of the glass-front door under normal and foreseeable use by consumers.

*Id.* ¶ 27 (emphasis added). This alleged defect, the Complaint continues, is inherent in *all* soda lime glass:

> When heated, the soda lime glass expands substantially more than occurs in more suitable types of glass (e.g., borosilicate glass, which has a coefficient of thermal expansion of 32 10-7 / 0C). This makes the glass doors in the Ovens significantly more prone to an abrupt and unexpected failure — breaking, cracking or shattering. This is because soda lime glass has a high coefficient of thermal expansion with very poor thermal shock resistance.

*Id.* ¶ 37; *see also id.* ¶¶ 36–44 (alleged problems with soda lime glass as a material choice). These allegations of a shared defect in the material used are typical of design defect claims and fundamentally inconsistent with manufacturing defect claims. *See Miller*, 2017 WL 4382339, at *5; *Garcia*, 127 F. Supp. 3d at 226; *Catalano*, 167 F. Supp. 3d at 554.

The Complaint's only allegations of a manufacturing defect consist of the occasional and purely nominal reference to an alleged "design and/or manufacturing defect." Compl. ¶¶ 7, 27, 76. Such "offhand references" to a manufacturing defect, unsupported by factual allegations concerning errors in the manufacturing process, are insufficient to plead a manufacturing defect.

*Garcia*, 127 F. Supp. 3d at 226. And because the Limited Warranty only covers such defects, Plaintiff has not stated a claim that GEA breached its warranty.

## II. PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS BECAUSE IT DUPLICATES HER FAILED EXPRESS WARRANTY CLAIM.

Plaintiff next alleges, in the alternative to her express warranty claim, that GEA breached an unspecified contract. To state a claim for breach of contract, a plaintiff must allege "(1) a valid contract; (2) a material breach; and (3) damages." *Armadillo Distrib. Enters., Inc. v. Hai Yun Musical Instruments Manufacture Co.*, 142 F. Supp. 3d 1245, 1252 (M.D. Fla. 2015). The second element requires a plaintiff to identify "the exact provisions breached to sufficiently state a claim for breach of contract." *Noble House, LLC v. Derecktor Fla., Inc.*, No. 0:20-CV-62438, 2021 WL 4147745, at *3 (S.D. Fla. Sept. 13, 2021). Here, however, Plaintiff fails to allege any contract other than the Limited Warranty, much less which specific provision of that contract GEA allegedly breached. As such, her breach of contract claim fails.[4] *See id.* (dismissing breach of contract claim for failure to identify breached provision).

## III. PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF.

The Court should also dismiss Plaintiff's Complaint to the extent it pleads injunctive relief. "Because injunctions regulate future conduct, a party

---

[4] To the extent Plaintiff's breach of contract claim is premised on the Limited Warranty, her claim fails for the reasons outlined above. *See supra* § I.

has standing to seek injunctive relief only if the party shows a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013). As such, "[r]edress for past injuries alone does not support a claim for injunctive relief." *Anibal v. William*, No. 3:17-CV-1290-J-25JRK, 2017 WL 8772154, at \*2 (M.D. Fla. Nov. 22, 2017).

Plaintiff alleges that standing exists "because she would consider purchasing another Oven provided that it was manufactured in such a way as to not suffer from the Defect, or if GE extended the warranty on the Ovens." Compl. ¶ 100; *see also id.* ¶ 104. Allegations of a "merely conjectural or hypothetical, threat of future injury" do not create standing, however. *Silva v. Baptist Health S. Fla., Inc.*, 838 F. App'x 376, 384 (11th Cir. 2020). And as a matter of law, "past purchasers of a product . . . are not likely to encounter future harm of the kind that makes injunctive relief appropriate." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020).[5] Indeed, the *Haft* court

---

[5] *See also, e.g.*, *Sabater v. Am. Journey (PET), LLC*, No. 21-60409-CIV, 2021 WL 5149846, at \*4 (S.D. Fla. Oct. 29, 2021) (dismissing claim for injunctive relief where "Plaintiff [could] not plausibly allege that he will purchase the products in the future"); *Sorin v. Folger Coffee Co.*, No. 20-80897-CV, 2021 WL 5545292, at \*2 (S.D. Fla. Mar. 5, 2021) (same where plaintiff "indicate[d] that she will not purchase the Defendant's products in the future"; *Herazo v. Whole Foods Mkt., Inc.*, No. 14-61909-CIV, 2015 WL 4514510, at \*3 (S.D. Fla. July 24, 2015) ("There is no likelihood of injury in the future if a plaintiff has no interest in purchasing the product at issue again.").

dismissed the plaintiffs' identical claims for injunctive relief on this basis. *See Haft*, 2022 WL 62181, at *18.

Plaintiff says nothing to warrant a different result. Quite the opposite, Plaintiff alleges she "specifically chose a replacement oven manufactured by one of GE's competitors due to her negative experience with GE's glass-front Oven doors." Compl. ¶ 51. Given this allegation, "there is no reason to believe that [Plaintiff]—having suffered the harm alleged—will choose to buy [a GEA oven] in the future." *Berni*, 964 F.3d at 147-48. Accordingly, she lacks standing to seek injunctive relief.

## IV. PLAINTIFF'S FDUTPA CLAIM FAILS.

### A. Plaintiff fails to plead her FDUTPA claim with specificity.

Plaintiff's FDUPTA claim first fails because she did not plead it with the requisite Rule 9(b) specificity. Rule 9(b) requires a party "alleging fraud" to "state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b). Therefore, where a claim "sound[s] in fraud," "Rule 9(b)'s heightened pleading standard applies." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127 (11th Cir. 2019). This rule applies to FDUTPA claims. *See DJ Lincoln Enters., Inc. v. Google LLC*, No. 21-12894, 2022 WL 203365, at *3 (11th Cir. Jan. 24, 2022) (affirming dismissal of FDUTPA claim for failure to comply with Rule 9(b)); *Hummel v. Tamko Bldg. Prods., Inc.*, No. 6:15-CV-910-ORL-

40GJK, 2015 WL 12843907, at *2 (M.D. Fla. Nov. 6, 2015) (Byron, J.) (dismissing on same basis).

Here, "the gravamen of [Plaintiff's FDUTPA] claim sounds in fraud." *Hummel*, 2015 WL 12843907, at *2. Plaintiff alleges that GEA " intentionally concealed the defective nature of the [Ovens] from her and the general public while continuing to market them as a durable, sustainable product." *Id.* at *3. She "also alleges that [GEA] actively concealed the defective nature of the [Ovens] to Class members." *Id.*; *see also* Compl. ¶¶ 62–63, 77, 115. Finally, Plaintiff cites "a series of alleged misrepresentations" to support her FDUTPA claim. *D.H.G. Props., LLC v. Ginn Cos., LLC*, No. 3:09-CV-735-J-34JRK, 2010 WL 5584464, at *5 n.9 (M.D. Fla. Sept. 28, 2010). Such claims allege "fraud" for Rule 9(b) purposes and thus trigger the heightened pleading requirement. *Id.*; *Hummel*, 2015 WL 12843907, at *2.

To satisfy this requirement, Plaintiff "had to plead: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled [Plaintiff]; and (4) what [GEA] gained by the alleged fraud." *DJ Lincoln*, 2022 WL 203365, at *3. Plaintiff's Complaint lacks this specificity. First, Plaintiff "wholly fails to identify the *precise* statements made by [GEA] or its associates" that constitute fraud. *Id.* (emphasis added). Instead, she broadly alleges that GEA

> made material misrepresentations and/or omissions of fact … that the
> Ovens were not defective, were of high quality, were suitable for their
> purpose of cooking and heating food, and would last as long, if not longer,
> than the average service life of any comparable oven.

Compl. ¶ 85; *see also* Compl. ¶ 115 (similar allegations). Likewise, "as to the

time, place, and person responsible for the alleged statements, [Plaintiff] offers

nothing more than vague references," *DJ Lincoln*, 2022 WL 203365, at *3,

alleging only that GEA made them on its website, in marketing materials, on

product labels, and through employee statements "prior to . . . the time Plaintiff

and Class Members performed research on the Ovens," "purchased the Ovens,"

or "the glass broke." Compl. ¶¶ 87–89.

These "generalized allegations" do not satisfy Rule 9(b)'s requirements,

mandating dismissal of Plaintiff's FDUPTA claim. *D.H.G. Props.*, 2010 WL

5584464, at *6; *see also DJ Lincoln*, 2022 WL 203365, at *3; *Curtis Inv. Co.,

LLC v. Bayerische Hypo-und Vereinsbank, AG*, 341 F. App'x 487, 494 (11th

Cir. 2009) (affirming dismissal because "allegations [were] too vague and

general to meet the requirements of Rule 9(b)").

### B.    Plaintiff alleges no misconduct in Florida.

Plaintiff's FDUPTA claim also fails for the independent reason that she

alleges no Florida misconduct. The FDUTPA "applies only to actions that

occurred within the state of Florida." *Five for Ent. S.A. v. Rodriguez*, 877 F.

Supp. 2d 1321, 1330 (S.D. Fla. 2012). Thus, when a complaint "is void of any

allegation that the unfair practice complained of . . . occurred in Florida and

the remaining allegations do not support such an inference," the plaintiff "fails to state a cause of action under FDUTPA." *Signeo Int'l Ltd. v. Wade*, No. 6:12-CV-1884-ORL-DAB, 2013 WL 12153590, at *5 (M.D. Fla. Apr. 1, 2013) (footnote omitted). Importantly, this means the "offending conduct" must have "occurred in Florida" for a plaintiff to state a FDUTPA claim. *W.W. Sports Importadora Exportadora e Comercial Ltda v. BPI Sports, LLC*, No. 0:16-CV-60147-WPD, 2016 WL 9375202, at *5 (S.D. Fla. Aug. 11, 2016) (dismissing complaint that failed to meet this requirement).

Plaintiff makes no such allegation. She alleges GEA violated the FDUTPA based on allegedly false misrepresentations and material omissions concerning the alleged defect. *See* Compl. ¶ 115. But Plaintiff does not allege that this "offending conduct" occurred in Florida. *W.W. Sports*, 2016 WL 9375202, at *5; *see also* Compl. ¶¶ 108–23. On the contrary, Plaintiff alleges that GEA "is a Delaware corporation with its principal place of business . . . [in] Louisville, Kentucky." Compl. ¶ 14. Thus, despite her allegations that it "maintained a factory service location in Lakeland, Florida" and generally "sells its Ovens to consumers throughout the United States, including in the state of Florida," *id.* ¶¶ 4, 14, the most plausible reading of the complaint is that GEA's alleged misconduct occurred in Kentucky. *See Iqbal*, 556 U.S. at 681 (allegations implausible if "more likely explanations" exist); *cf. Beaver v. Inkmart, LLC*, No. 12-60028, 2012 WL 4005970, at *3 (S.D. Fla. Sept.

23

12, 2012) (dismissing FDUTPA claim where "the allegedly deceptive conduct occurred telephonically or via e-mail" from out-of-state defendants). Such extra-territorial conduct cannot support a claim under the FDUTPA, and the Court should dismiss Plaintiff's FDUTPA claim.

## CONCLUSION

For all of these reasons, GEA respectfully requests that this Court dismiss Plaintiff's entire Class Action Complaint with prejudice and grant such other and further relief as the Court deems just and proper.

## LOCAL RULE 3.01(G) CERTIFICATION

I HEREBY CERTIFY that on May 9, 2022, counsel for Defendant conferred with counsel for Plaintiff by email, and Plaintiff is opposed to the relief requested in this motion.

Dated: May 9, 2022                    Respectfully submitted,

*/s/ Carolina Y. Blanco*

William J. Judge, Jr. (FBN 426296)
Carolina Y. Blanco (FBN 98878)
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
Telephone: 813.221.3900
Facsimile: 813.221.2900
William.judge@hwhlaw.com
Debra.whitworth@hwhlaw.com
Carolina.blanco@hwhlaw.com
Jaime.schill@hwhlaw.com

Marissa S. Ronk (admitted *pro hac vice*)
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone: 303.244.1800
Facsimile:  303.244.1879
ronk@wtotrial.com

*Attorneys for Defendant Haier US*
*Appliance Solutions, Inc. d/b/a GE*
*Appliances*

25

16854219v1